# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

ROBERT AIKENS,

       Appellant-Defendant,

v.                                                    Case No. 20-13257

TIMOTHY J. MILLER, Trustee,

       Appellee-Plaintiff.

_____/

## OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S DECISION TO GRANT SUMMARY JUDGMENT IN FAVOR OF APPELLEE AND TO DENY SUMMARY JUDGMENT IN FAVOR OF APPELLANT

Appellee Timothy J. Miller, trustee for the Chapter 7 bankruptcy estate of Alexandra Aikens ("Debtor"), filed this action seeking turnover of property under 11 U.S.C. § 542(a) and (b). According to Appellee, Appellant Robert Aikens owed the estate $42,614.62 based on the terms of a Judgment of Divorce ("JOD") agreed to between Debtor and Appellant. The parties filed cross motions for summary judgment before the bankruptcy court, and the bankruptcy court ruled in favor of Appellee. (ECF No. 3, PageID.336-37.) The bankruptcy court ordered that Appellant pay the estate $42,614.62. (*Id.*)

Appellant challenges the bankruptcy court's decision. (ECF No. 1.) The matter has been thoroughly briefed. (ECF Nos. 5-7.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, the court will affirm the bankruptcy court's decision.

## I. BACKGROUND

The parties agree that there are no factual disputes in this case. (ECF No. 5, PageID.527, Appellant's Brief ("It was agreed between the parties that the issues in the Suit were strictly legal in nature"); ECF No. 6, PageID.564.) The following facts are taken from the record established by both parties.

Debtor and Appellant were married and lived in a house in Canton, Michigan. (ECF No. 3, PageID.319; ECF No. 5, PageID.525.) Divorce proceedings were initiated in May 2019, and Debtor and Appellant agreed to a JOD on February 10, 2020. (ECF No. 3, PageID.319-20; ECF No. 5, PageID.525.) The JOD contained a provision that required sale proceeds from the martial house to be used to pay Debtor's and Appellant's outstanding debts:

> [I]n the event the [marital home] is sold, and sale proceeds are applied to some of the parties['] debt, but there aren't enough proceeds to pay all of the parties['] debt, the parties will be equally responsible for 50% [of] the balance of the debt that remains owing and will hold the other harmless.

(ECF No. 3, PageID.52-53; ECF No. 3, PageID.320.)

On March 16, 2020, Debtor filed for Chapter 7 bankruptcy. (ECF No. 3, PageID.320; ECF No. 5, PageID.525.) Appellee was appointed as trustee over Debtor's bankruptcy estate, and upon agreement between Debtor and Appellant, the marital home was sold for $203,000.00. (ECF No. 3, PageID.320-21.) After paying closing costs and secured claims, $19,172.09 remained. (ECF No. 6, PageID.562.) Pursuant to the terms of the JOD, the proceeds from the sale were used to pay marital debt. (ECF No. 3, PageID.320-21; ECF No. 6, PageID.572.) Even after the proceeds were applied to existing marital debt, there remained $85,229.24 in debt. (ECF No. 3, PageID.321;

2

ECF No. 6, PageID.572.) All the remaining marital debt was incurred under Debtor's name. (ECF No. 6, PageID.561; ECF No. 3, PageID.144-54; ECF No. 7, PageID.596.)

Appellee brought this suit under 11 U.S.C. § 542(a) and (b) to collect under the JOD $42,614.62, or half the remaining marital debt, from Appellant. (ECF No. 3, PageID.321.) Appellant refused to pay, arguing that the terms of the JOD did not mandate payment, and the parties filed cross motions for summary judgment. (*Id.*)

On December 3, 2020, the bankruptcy court issued an opinion granting summary judgment in Appellee's favor and denying summary judgment in Appellant's favor.[1] (*Id.*, PageID.318-35.) The court reviewed the elements of an action under 11 U.S.C. § 542(b). Section 542(b) states that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee." The court reasoned that "entity" under § 542(b) included individuals such as Appellant; that Appellant's legal obligations under the JOD to pay 50% of remaining marital debt constituted a "right to payment" on the part of Debtor and thus a "debt" collectable by Appellee; that the debt "matured" when the marital home was sold; and that the debt was "the property of [Debtor's bankruptcy] estate." (ECF No. 3, PageID.318-35.) Thus, according to the court, Appellant was liable to Appellee for $42,614.62. (*Id.*, PageID.334-35.)

Appellant appealed the bankruptcy court's decision on December 11, 2020. (ECF No. 1.)

---

[1] The bankruptcy court also granted in part and denied in part a motion to dismiss filed by Appellant. (ECF No. 3, PageID.322-324.) The court held that Appellee did not state a valid claim under 11 U.S.C. § 542(a), but it reasoned that Appellee did state a valid claim under 11 U.S.C. § 542(b). (ECF No. 3, PageID.322-324.) The holding on Appellant's motion to dismiss was not appealed.

3

## II.  STANDARD

To prevail on a motion for summary judgment, a movant must show—point out—that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

District courts have jurisdiction to review bankruptcy court decisions under 28 U.S.C. § 158(a). *In re Conco, Inc.*, 855 F.3d 703, 709 (6th Cir. 2017). "On appeal from a

bankruptcy court, a district court applies the clearly erroneous standard of review to findings of fact, and reviews questions of law *de novo*." *In re Gardner*, 360 F.3d 551, 557 (6th Cir. 2004).

## III. DISCUSSION

Appellant advances four reasons why he believes the bankruptcy court should be reversed. He argues that the bankruptcy court's decision "destroy[ed] the [JOD's] mutuality of obligations"; that the court "creat[ed] a remedial provision" not contained in the JOD; that the court "altert[ed] . . . provisions" of the JOD; and the court failed to interpret the JOD against the drafting party. (ECF No. 5, PageID.537.) Each argument will be addressed in turn.

### A. Mutuality of Obligations

The center of the parties' dispute is the JOD provision stating that, after the sale of the marital home, "the parties will be equally responsible for 50% [of] the balance of the debt that remains owing and will hold the other harmless." (ECF No. 3, PageID.52-53.) The parties agree that the interpretation of the JOD, and whether Appellee is entitled to compensation under the agreement, is governed by Michigan law. *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000) (quotations and citations removed) ("The basic federal rule in bankruptcy is that state law governs the substance of claims . . . Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law."). (ECF No. 5, PageID.541-42; ECF No. 6, PageID.568.) "A divorce judgment entered by agreement of the parties represents a contract." *Rose v. Rose*, 795 N.W.2d 611, 613 (Mich. Ct. App. 2010). When interpreting a contract, "the court's obligation [is] to determine the intent of the parties by examining

5

the language of the contract according to its plain and ordinary meaning." *In re Smith Trust*, 480 Mich. 19, 745 N.W.2d 754, 758 (2008) (citing *Frankenmuth Mut. Ins. Co. v. Masters*, 460 Mich. 105, 595 N.W.2d 832, 837 (1999)). "[It] must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Grp. Agency*, 468 Mich. 459, 663 N.W.2d 447, 453 (2003).

1. **Whether the Bankruptcy Court Improperly Granted Summary Judgment in Favor of Appellee** *Sua Sponte*

First, Appellant claims that the bankruptcy court's decision rested solely on the interpretation of the JOD language "equally responsible for 50% [of] the balance of the debt," and the court improperly issued a summary judgment determination *sua sponte*. (ECF No. 5, PageID.537-41.)

The premise of Appellant's argument is incorrect; the bankruptcy court's decision did not rely solely on the "50% clause." The court analyzed the 50% clause *in the context* of § 542(b)'s requirement that Appellant's debt be "matured." (ECF No. 3, PageID.326-27.) Appellant had argued that Debtor had not suffered harm from Appellant's refusal to pay 50% of the marital debt because Debtor declared bankruptcy and would at some point be discharged from paying the debts. (*Id.*, PageID.327.) Thus, according to Appellant, enforcement of the JOD was not necessary to "hold [Debtor] harmless." (*Id.*, PageID.52-53, 327.) The bankruptcy court accurately noted that Appellant's argument overlooked the 50% clause and its intimate connection to the "hold harmless clause." (*Id.*) The court reasoned, assuming that Appellant was correct that "his promise to hold [Debtor] harmless has not matured," his promise to be "responsible" for 50% of the marital debt had in fact matured. (*Id.*, PageID.327-28.) The

6

50% clause and the hold harmless clause are two essential parts to the same agreement: that Appellant will pay half of the marital debt. The bankruptcy concluded that Appellant cannot prevail even assuming that his legal argument had merit.

However, the court did not stop there. Later in the bankruptcy court's opinion, it directly addressed Appellant's argument that "the hold harmless provision . . . cannot be enforced against him because [Debtor] has not suffered any injury." (*Id.*, PageID.330.) It explicitly rejected the argument. The court first noted that the hold harmless clause undeniably applied to the 50% clause and Appellant's obligation to help pay marital debt. (*Id.*, PageID.332.) Further, the court reasoned that all the marital debts at issue were "incurred solely in [Debtor's] name." (*Id.*) Therefore, "the creditors holding these unpaid debts do not have any direct recourse against [Appellant]" and must obtain recovery by means of "the property in [Debtor's] bankruptcy estate." *See In re Lennys Copy Center*, 515 B.R. 562, 564 (Bankr. E.D. Mich. 2014) ("[T]he Debtor's duties and interests after filing the Chapter 7 bankruptcy case are aligned with the interest of the Chapter 7 Trustee and the bankruptcy estate, in maximizing the recovery of assets for the benefit of the bankruptcy estate and its creditors."); 11 U.S.C. § 541(a) (stating that the bankruptcy estate "is comprised of . . . all legal or equitable interests of the debtor in property."). (ECF No. 3, PageID.332-33.) If Appellant fails to meet his obligation to pay 50% of the marital debt, "[Debtor's] bankruptcy estate," whom Appellee represents, "will have fewer assets by which to pay such debts." *See In re Shelbyville Road Shoppes, LLC*, 775 F.3d 789, 794 (6th Cir. 2015) ("It is axiomatic that a trustee's interests and rights in property are limited by and to the rights and interests of the debtor in that property."). (ECF No. 3, PageID.333.) Thus, the bankruptcy court

reviewed Appellant's claim that an injury was not present in the case and that the JOD did not apply, and concluded that the argument was flawed. (ECF No. 3, PageID.333.) Appellant's assertion on appeal that the bankruptcy court based its opinion solely on the 50% clause is inaccurate.

However, even if Appellant were correct that the bankruptcy court's decision rested on the 50% clause, Appellant is incorrect to claim that the bankruptcy court granted summary judgment *sua sponte*. Both parties moved for summary judgment, and both parties disputed the impact and obligations contained in the JOD. (*See* ECF No. 3, PageID.80-94, 234-54.) In fact, Appellee's motion for summary judgment explicitly stated that it "seeks to enforce . . . [Appellant's] agreement to hold the Debtor harmless *from [Appellant's] responsibility to pay 50% of the Marital Debt.*" (*Id.*, PageID.87.) Appellee went further and explicitly argued that, under the JOD, Appellant agreed to both 1) "pay 50% of the Marital Debt" and 2) "hold the Debtor harmless." (*Id.*, PageID.88, 93.) In Appellee's response to Appellant's motion for summary judgment, Appellee again noted that Appellant "agreed to pay a portion of the Marital Debt," i.e. 50%, and in addition "[agreed] to hold the Debtor harmless for it." (*Id.*, PageID.286.) Furthermore, Appellee quoted the entire JOD provision, including the 50% clause, when arguing that the debt had matured under § 542(b). (*Id.*, PageID.299.)

Both parties repeatedly referred to, and cited, the JOD provision generally, albeit often labelling the provision as the "hold harmless" provision. (*See* ECF No. 3, PageID.80-94, 234-54.) While a portion of the bankruptcy court's analysis relied on a distinction between the hold harmless and 50% clause (*id.*, PageID.327-28), the two clauses are inherently interlinked. Appellant, in the JOD, agreed to hold Debtor

harmless from 50% of the marital debt. (*Id.*, PageID.52-53.) The clauses can be appropriately analyzed together. The issue of whether Appellant was liable for half of the remaining marital debt under the JOD was properly before the bankruptcy court, and the court did not err in analyzing the meaning of the JOD's language. *See also Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers*, 203 F.3d 926, 932 (6th Cir. 2000) (holding that, even where a district considered summary judgment *sua sponte* in favor of a non-moving party, there was no abuse of discretion because the parties had "notice and opportunity to address the issues" raised by the moving party); *Green v. Nevers*, Case No. 92-76881, 1993 WL 1620511, at *27 (E.D. Mich. April 13, 1993) (Rosen, J.) (stating that courts have no obligation to share their "independent legal research and [exact] analysis with counsel before issuing [their] ruling[s]"). In accordance with its responsibilities, the bankruptcy court independently and accurately analyzed the parties' motions and the JOD.

## 2. Whether the Bankruptcy Court "Destroyed" the Mutuality of Obligations

Appellant next argues that the bankruptcy court's decision eliminated the mutuality of obligations between Debtor and Appellant in the JOD. In support of this argument, Appellant claims that, under the bankruptcy court's decision, he is liable for $42,614.62 while his contracting party (Debtor) is in bankruptcy and not required to pay her half of the marital debt.[2] (ECF No. 5, PageID.542-43.)

Appellant's argument fails on its own terms. Due to the amount of her debt, Debtor was forced to declare bankruptcy, and Appellee now administers her interests

---

[2] Appellant does not assert that Debtor has failed to pay for her portion of the marital debt, or that Appellant has ever commenced legal proceedings against Debtor or Appellee to compel payments owed under the JOD.

9

and assets to satisfy her remaining debt obligations. *See In re Lennys Copy Center*, 515 B.R. 562, 564; *In re Shelbyville Road Shoppes, LLC*, 775 F.3d at 794. As the bankruptcy court stated, and Appellant does not contest, "the creditors holding [the] unpaid debts do not have any direct recourse against [Appellant]" and must obtain recovery by means of "the property in [Debtor's] bankruptcy estate." (ECF No. 3, PageID.332-33.) The bankruptcy estate, which is comprised of Debtor's "legal or equitable interests," 11 U.S.C. § 541(a), is still obliged to pay Debtor's half of the marital debt, to the extent that the estate has enough assets available. (ECF No. 3, PageID.332-33.) To that end, payment from Appellant is important because without it "[Debtor's] bankruptcy estate will have fewer assets by which to pay such debts." (ECF No. 3, PageID.333.) Thus, Appellant's claim that Debtor has not suffered harm or detriment, and that "she has no responsibility for marital debt," is legally and factually inaccurate.[3] (ECF No. 5, PageID.542-43.)

Even if Debtor and her bankruptcy estate were not obliged to pay 50% of the marital debt under the JOD, that does not mean, as Appellant argues, that mutuality of obligations is "destroyed." (ECF No. 5, PageID.544.) Mutuality of obligation is foundational element of a legally enforceable contract. *See Bank of America, NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 878 N.W.2d 816, 830 (2016) (stating the elements of a contract). Without it, no contract exists *ab initio*. *Id.* The requirement that parties have

---

[3] If the mutuality of obligations is eliminated simply because one party has entered bankruptcy, the ability of a trustee to collect on past debts and "maximiz[e] the recovery of assets," his primary responsibility, would be materially limited. *In re Lennys Copy Center*, 515 B.R. at 564; 9 Am. Jur. 2d *Bankruptcy* § 570 (2021) ("In Chapter 7 bankruptcy proceedings . . . the trustee must investigate the financial affairs of the debtor, collect and reduce to money the property of the estate, and maximize the value of the estate.").

mutuality of obligation is synonymous with the requirement of consideration. *Hall v. Small*, 705 N.W.2d 741, 744 (Mich. Ct. App. 2005) (quotations removed) ("If the requirement of consideration is met, there is no additional requirement of mutuality of obligation."). "To have consideration there must be a bargained-for exchange; there must be a benefit on one side, or a detriment suffered, or service done on the other." *Innovation Ventures v. Liquid Mfg.*, 499 Mich. 491, 885 N.W.2d 861, 871 (2016).

Without question consideration existed in the JOD, even outside the parties' mutual agreement to pay 50% of the marital debt. The JOD is a collection of exchanges of obligations and property between Debtor and Appellant. For instance, Debtor received "[h]er Grandfather's table and chairs" and agreed to "hold [Appellant] harmless" to "any liability on the . . . property." (ECF No. 3, PageID.50.) Appellant was awarded other "household furniture" and "cash, bank accounts, and jewelry" that were at the time in his possession. (*Id.*, PageID.50-51.) In the JOD, Debtor and Appellant traded benefits, property, and legal rights to conclude their divorce proceedings. To the extent that Appellant believes after Debtor's bankruptcy that the JOD left him in a comparatively weaker economic position, that in no way affects the existence of consideration. It is well established that courts do not "inquire into the sufficiency of consideration." *General Motors Corp. v. Dep't of Treasury*, 466 Mich. 231, 644 N.W.2d 734, 738 (2002). "It has been said a cent or a pepper corn, in legal estimation, would constitute a valuable consideration." *Id.* Even if in retrospect Appellant believes Debtor benefited substantially from the JOD at the expense of Appellant, the court must enforce the contractual agreement he willingly entered.

11

## B. Creating a New Remedial Provision in the JOD

Appellant argues that the bankruptcy court "created" a new JOD provision that established remedies in the event of breach on the part of Appellant. (ECF No. 5, PageID.537.) He claims that the exclusive remedy for breach of the JOD is to petition for spousal support, and he cites the following JOD provision ("petition for spousal support provision"):

> [I]n the event that either party is in default and fails to pay the debts as set forth [in the JOD], and such failure to pay is impacting the other parties['] credit, the injured party can petition for spousal support in an amount to pay the debt obligation to preserve credit.

(ECF No. 3, PageID.53.)

It is a basic tenet of contract law that, when an agreement is breached, "[t]he remedy . . . is to place the nonbreaching party in as good a position as if the contract had been fully performed," primarily by means of monetary compensation. *Corl v. Huron Castings, Inc.*, 450 Mich. 620, 544 N.W.2d 278, 280 (1996); *Wright v. Genesee Cnty.*, 504 Mich. 410, 934 N.W.2d 805, 810 (2019) ("In a breach-of-contract action, an injured party may seek damages for an injury caused by another party's breach of a contractual obligation."); *see also* Restatement (Second) of Contracts § 346 (Am. L. Inst. 1981). In addition, Appellant does not contest the bankruptcy court's holding that courts may "fashion an appropriate remedy, including the entry of a money judgment, when a party to a consent judgment of divorce fails to honor an obligation under it." (ECF No. 3, PageID.330 (citing *Butler v. Butler*, 356 Mich. 607, 97 N.W.2d 67, 73 (1959)).)

Despite these basic legal precepts, Appellant argues that the JOD can be enforced solely through a "petition for spousal support." (ECF No. 3, PageID.53.) He misreads the language and meaning of the JOD. No provision in the JOD states that

12

basic remedies for contracts and divorce judgments are excluded, limited, or otherwise barred. Further, the provision cited by Appellant states that Debtor "can" petition to receive spousal support in the case that Appellant fails to pay certain debts, and the failure to pay affects Debtor's credit. (ECF No. 3, PageID.53.) The word "can" does not imply exclusivity. *See In re Smith Trust*, 745 N.W.2d at 758 (stating the courts, in engaging in contract interpretation, must "examin[e] the language of the contract according to its plain and ordinary meaning"). "Can" is defined as an expression of "objective possibility, opportunity, or absence of prohibitive conditions." *Can*, Oxford English Dictionary (2021). Simply because it is *possible* for Debtor to obtain spousal support if Appellant is in default does not mean that Debtor is *required* to seek spousal support as the sole remedy in the case of default. Like the word "may," "can" "implies discretion," in contrast to "the word 'shall' [which] usually connotes a requirement." *Kingdomware Tech., Inc. v. United States*, 136 S.Ct. 1969, 1977 (2016).

      The structure of the parties' contract supports this interpretation. *See Klapp*, 663 N.W.2d at 453 (stating that the court "must . . . give effect to every word, phrase, and clause in a contract"). The JOD explicitly disclaims any right to spousal support for either Debtor or Appellant. The agreement states that neither party is "entitled to spousal support and spousal support for [both parties] is forever barred." (ECF No. 3, PageID.43.) This provision and petition for spousal support provision work in concert. The JOD sets a general rule that spousal support is not permitted, but then allows (but does not require) the collection of spousal support in the case of default on certain debts specified in the JOD. The provisions do not in any way alter the default rules that a party may sue and receive compensation for a breach of contract or divorce

13

judgment.[4] *See Corl*, 544 N.W.2d at 280; *Wright*, 934 N.W.2d at 810. (ECF No. 3, PageID.330.)

Appellant cites the interpretive cannon that "specific [contractual] provision controls over a related but more general . . . provision" to support his theory that the petition for spousal support provision trumps any general remedy provision the bankruptcy court "created." (ECF No. 5, PageID.545.) However, that interpretive cannon, as applied to the JOD, supports Appellee's position. The general rule under the JOD is that spousal support is not permitted. (ECF No. 3, PageID.43.) The petition for spousal support provisions creates a specific exception to that general rule. (*Id.*, PageID.53.) Debtor would be permitted to seek spousal support where Appellant defaults on certain debts and the default negatively affects Debtor's credit, notwithstanding the JOD's general prohibition on spousal support. However, the provisions say nothing about whether and to what extent Debtor can utilize traditional remedies to enforce Appellant's obligation to pay 50% of the marital debt. The bankruptcy court did not "create" a new remedial provision in the JOD and reversal of the bankruptcy court on this issue is not warranted.

### C. Altering Provisions of the JOD

Appellant claims that the bankruptcy court "alter[ed]" and "add[ed]-in provisions to [the JOD]." (ECF No. 5, PageID.524.) He notes that courts are generally "without

---

[4] The determination of whether spousal support is justified is "within the . . . court's discretion" and is based on equitable considerations. *Berger v. Berger*, 747 N.W.2d 336, 354 (Mich. Ct. App. 2008). The court calculates spousal supported considering what is "just and reasonable" and reviews several factors, such as "the past relations and conduct of the parties" and "the parties' ages." *Id.* (quotations removed). The legal standard for a spousal support petition is different, and far more discretionary, than a breach of contract claims for sum certain.

14

authority to modify unambiguous contracts." (*Id.*, PageID.542 (quoting *Holmes v. Holmes*, 760 N.W.2d 300, 312 (2008)).)

In support of this argument he again claims that the JOD did not permit Appellee to collect a monetary award for breach of Appellant's obligation to pay 50% of the marital debt. (ECF No. 5, PageID.546-47.) As explained above, the bankruptcy court properly found that Appellee could enforce the obligation through an award of monetary compensation. *See supra* Section III.B. Despite the fact that Debtor could seek spousal support if Appellant defaulted on certain debts, and the default harmed Debtor's credit, the JOD allowed Debtor and Appellee to recover amounts owed under basic principles of contract and divorce judgment enforcement. *Id.* The bankruptcy court interpreted and enforced the JOD as written and did not "alter" the contract. (ECF No. 5, PageID.524.) Appellant's claim that the bankruptcy court added a remedial provision by means of its legal analysis lacks a basis of support.

Appellant adds that only Wayne County Circuit Court has jurisdiction to alter the JOD. (ECF No. 5, PageID.518, 548.) First, the bankruptcy court did not alter the JOD, and this jurisdictional argument has no merit. Furthermore, Appellee brought this suit under federal bankruptcy law, 11 U.S.C. § 542(b), and the bankruptcy court, and this court, have jurisdiction over those claims. *See* 28 U.S.C. §§ 1334(b), 157(a); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669-70 (2015) (describing the jurisdictional bases for bankruptcy litigation and bankruptcy courts); *see also See Raleigh*, 530 U.S. at 20 (quotations and citations removed) ("The basic federal rule in bankruptcy is that state law governs the substance of claims.").

### D. Interpreting the JOD Against the Drafting Party

For Appellant's final argument, he states that if the JOD is unambiguous, the bankruptcy court improperly expanded the remedies available to Appellee. (ECF No. 5, PageID.549-51.) However, if the agreement is ambiguous, according to Appellant, it must be interpreted in his favor because Debtor drafted the JOD. (*Id.*)

When a contract's language in unambiguous, "[the] court[] must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith Trust*, 745 N.W.2d at 758. "If the language is ambiguous, longstanding principles of contract law require that the ambiguous provision be construed against the drafter." *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 664 N.W.2d 776, 787 (2003). However, this rule "is only to be applied if all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence," have been exhausted. *Klapp*, 663 N.W.2d at 455.

First, the court notes that Appellant, in his appeal, states that "[a]ll parties to the litigation . . . agreed that the JOD and the provisions therein were unambiguous." (ECF No. 5, PageID.545.) This is in conformity with Appellant's stance before the bankruptcy court. (*See, e.g.*, ECF No. 3, PageID.250, Appellant's Motion for Summary Judgment.) Thus, Appellant's argument that the JOD should be construed against Appellee if the JOD is ambiguous cannot, based on Appellant's own positions in the case, support reversal of the bankruptcy court.

Second, the parties did not submit extrinsic evidence or questions of fact to the bankruptcy court. Both parties agree that there are no genuine disputes of fact. (ECF No. 5, PageID.527; ECF No. 6, PageID.564.) As Appellant states in his briefing, "the

JOD and the provisions therein [are] unambiguous" (ECF No. 5, PageID.545), and the sole task left to the bankruptcy court was to interpret the meaning of the JOD. As explained above, the bankruptcy court correctly determined that the JOD unambiguously obligated Appellant to pay 50% of the marital debts and that the JOD's provisions on spousal support did not bar Appellee's recovery. Thus, the doctrine of construing a contract against the drafter, which may only be used "if all conventional means of contract interpretation" have been exhausted, does not apply in this case. *See In re Smith Trust*, 745 N.W.2d at 758; *Klapp*, 663 N.W.2d at 455.

Third, Appellee accurately identifies that Appellant did not argue in briefing before the bankruptcy court that the JOD is ambiguous and the agreement should be construed against Appellee as the drafter. (ECF No. 6, PageID.588.) Appellant does not contest that he failed to raise the argument before the bankruptcy court, nor does he provide an explanation for his decision to wait until after a final decision to advance this new claim. Thus, Appellant's argument has been forfeited. *See In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 863 (6th Cir. 1992) (declining to consider an issue "not raised in the bankruptcy court"); *accord Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 791 n.5 (6th Cir. 2002) (""[A]rguments . . . not raised below . . . may not be asserted . . . on appeal.").

## IV. CONCLUSION

The bankruptcy court thoroughly reviewed the parties' arguments and correctly determined that Appellant is obliged to pay Appellee $42,614.62 under the JOD. The four grounds of appeal do not support reversal of the bankruptcy court's decision. Accordingly,

IT IS ORDERED that the bankruptcy court's decision to grant summary judgment in favor of Appellee and to deny summary judgment in favor of Appellant is AFFIRMED.

                                             s/Robert H. Cleland           /
                                             ROBERT H. CLELAND
                                             UNITED STATES DISTRICT JUDGE

Dated: July 14, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 14, 2021, by electronic and/or ordinary mail.

                                               s/Lisa Wagner               /
                                             Case Manager and Deputy Clerk
                                             (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-13257.AIKENS.BankruptcyAppeal.RMK.RHC.3.docx